UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
SHAWN STEPHEN,

           Plaintiff,

   -against-

CITY OF NEW YORK, SGT. BRIAN HERBERT, P.O.
MATTHEW HYNES, P.O. JASON MICHAUD, and P.O.
JEFFREY STRAUBER,

           Defendants.
---------------------------------------------------------------------X

**AFFIRMATION IN SUPPORT**

Docket No.:
CV 12-1295

Brett A. Zekowski, an attorney duly admitted to practice in the Eastern District Court of New York, affirms the following to be true under the penalties of perjury:

1. I am a partner of the law firm Parker Waichman, LLP, attorneys for the Plaintiff herein, and as such I am fully familiar with the facts and circumstances of this action based upon my review of the case file and investigation materials contained therein.

2. I submit this affirmation in support of the motion on behalf of the plaintiff for an order issuing an "adverse inference" charge for failing to provide a) the actual or certified copy of the 911 tapes, b) the actual or certified copy of the Sprint tapes, c) the actual or certified copy of the radio motor patrol car transmission tapes, and d) the actual or certified copy of the original communication tapes and transcripts between police officers and 911 and/or dispatch for the morning in question at the location of plaintiff's incident, and for other and further relief this Court deems just and proper.

**FACTS RELEVANT TO SPOLIATION OF EVIDENCE**

3. Plaintiff, Shawn Stephen, was leaving the premises known as Maracas on the early morning of December 19, 2010. While attempting to enter his vehicle, which was parked on the

3

nearby corner of 123rd Street and Jamaica Avenue, he was struck in the head by one of the defendant-officers. Thereafter, while on the ground, he was repeatedly punched, kicked, and struck with weapons, such as a baton. As a result he sustained several injuries, including a fractured leg.

4. As a result, your affirmant's office sent correspondence to the defendants on January 6, 2011, requesting any 911 tapes and "Sprint" transcripts. Annexed hereto as **Exhibit "A"**. Also, on January 6, 2011, you affirmant's office submit to defendants a Notice of Claim putting them on notice of this action. Annexed hereto as **Exhibit "B"**.

5. In addition, plaintiff served on defendants a Supplemental Notice for Discovery and Inspection and Production of Documents, which demanded, amongst others, a) the actual or certified copy of the 911 tapes, b) the actual or certified copy of the Sprint tapes, c) the actual or certified copy of the radio motor patrol car transmission tapes, and d) the actual or certified copy of the original communication tapes and transcripts between police officers and 911 and/or dispatch for the morning in question at the location of plaintiff's incident. Annexed hereto as **Exhibit "C"**.

6. Thereafter, on January 8, 2013, defendants, by counsel Ryan Shaffer, served on plaintiff Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories and Document Requests. Annexed hereto as **Exhibit "D"**. Contained within defendants' response, defendant affirms that "no 911 tapes exist as any such recordings are deleted automatically 180 days after being made". *Id.*

7. In addition, as part of the investigation conducted by the Civilian Complaint Review Board (CCRB), an audio recording of a 911 call and communication CD detailing two

other 911 calls were heard by the investigator, presumably provided by the defendant, City of New York. Annexed hereto as **Exhibit "E"**.

## LEGAL ARGUMENT

8. In situations where sanctions are warranted, district courts have broad discretion in "crafting an appropriate sanction for spoliation". *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999). The applicable sanction should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party". *Id.*

9. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.*. A court may impose sanctions against a party who spoliates evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure as well as through the Court's inherent powers to control the judicial process and the litigation before it. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2nd Cir. 2002).

10. A party seeking spoliation sanctions in the form of an adverse inference instruction has the burden of establishing: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*; *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2016 WL 5255939 (E.D.N.Y. 2016).

11. Failure to disclose under Rule 37 encompasses both the destruction of evidence, or spoliation. *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2016 WL 5255939 (E.D.N.Y. 2016); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102 (E.D.N.Y. 2012).

12. In this matter, all three factors stated in *Residential Funding Corp.* and *Haltman* are present.

### Defendants Had Control over the Evidence and Had an Obligation to Preserve it at the Time it was Destroyed

13. The obligation to preserve evidence arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation". *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423 (2nd Cir. 2001).

14. Here, plaintiff sent correspondence to the defendants almost immediately following the accident, which occurred on December 19, 2010. On January 6, 2011, your affirmant's office sent correspondence to the defendants requesting any 911 tapes and "Sprint" transcripts. Annexed hereto as **Exhibit "A"** is a copy of plaintiff's letter. Also, on January 6, 2011, you affirmant's office submit to defendants a Notice of Claim putting them on notice of this action. Annexed hereto as **Exhibit "B"** is a copy of Plaintiff's Notice of Claim. In fact, your affirmant's office received a stamped copy marked "received" within that same month on January 25, 2011. *Id.*

15. In addition, your affirmant's office served on defendants a Supplemental Notice for Discovery and Inspection and Production of Documents, which demanded, amongst others, a) the actual or certified copy of the 911 tapes, b) the actual or certified copy of the Sprint tapes, c) the actual or certified copy of the radio motor patrol car transmission tapes, and d) the actual or certified copy of the original communication tapes and transcripts between police officers and 911

and/or dispatch for the morning in question at the location of plaintiff's incident. Annexed hereto as **Exhibit "C"**.

16. Furthermore, based on defendant's response to plaintiff's interrogatories, dated January 8, 2013, it states that 911 tapes and recordings are held for 180 days and then deleted. Annexed hereto as **Exhibit "D"**, response to interrogatory no. 8.

17. As such, defendants were obligated to preserve the evidence considering that these same Defendants had notice of plaintiff's demand and Notice of Claim within 30 days of the incident. It is also important to note that some of this evidence was provided to the CCRB. Annexed hereto as **Exhibit "E"**.

18. Therefore, defendants certainly knew it was relevant or should have known these evidences were relevant to litigation, especially considering, as defendants stated, recordings are not destroyed for 180 days.

### *The Records Were Destroyed with a 'Culpable State of Mind'*

19. The "culpable state of mind" factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently'. *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102 (E.D.N.Y. 2012).

20. In this matter, defendants knowingly destroyed this evidence. Defendants, as demonstrated above, knew, within a month, of plaintiff's Notice of Claim and intention to prosecute this action and the details of the action, coupled with our letter requesting the 911 calls and sprint transcripts. Moreover, as also demonstrated above, defendants retain such recordings for 180 days and provided some of these evidences to the CCRB. Therefore, with more than 150 days after receiving notice, they nonetheless destroyed the evidence. As such, defendant knowingly destroyed such evidence.

21. At the minimum, defendant negligently destroyed such evidence, which, as stated by this Court in *Curico*, is sufficient to demonstrate a "culpable state of mind". *Id.*

***The Destroyed Evidence was 'Relevant' to Plaintiff's Claim such that a Jury Could Find that it Would Support the Claim***

22. To establish this last factor, a party who destroys evidence in bad faith, is, alone sufficient. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2nd Cir. 2002); *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2016 WL 5255939 (E.D.N.Y. 2016). In addition, a showing of *gross negligence* in the destruction of the evidence is also sufficient, standing alone. *Id.*

23. In this matter, as demonstrated above, defendants in bad faith destroyed the evidences sought. Defendants had notice of the claim and plaintiff's demand within 30 days following the accident. Defendants routinely store the date for 180 days, which means for 150 days they had the duty to preserve the data, but nonetheless destroyed it. Moreover, some of these evidences were provided to the CCRB for their review.

24. At the minimum, this conscious destruction is grossly negligent given the amount of time defendants had notice of the claim and that copies were provided to the CCRB, but not plaintiff.

25. Such evidence is important to the prosecution of plaintiff's action, in which the 911 audio may indicate, and likely did indicate, the conduct of the defendant-officers.

26. Even if this Court were to find that an adverse inference charge is inapplicable, based on the foregoing, plaintiff asks this Court to instruct the jury, pursuant to Rule 37(e)(2), that it may presume the information as unfavorable to defendants.

## CONCLUSION

27. In sum, plaintiff has met the factors set forth in *Residential Funding Corp.* and *Haltman* to warrant an adverse inference charge.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court issue an Order granting Plaintiff's application in accordance with the foregoing and for such other and further relief this Court deems just and proper under the circumstances.

DATED:  Port Washington, New York
October 25, 2016

_____
Brett A. Zekowski